IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **BLAIRE WOODWARD**, | : | |
| | : | |
| Plaintiff, on behalf of himself and all others similarly situated, | : | Civil Action No. 1:20-cv-1818 |
| | : | |
| | : | Judge Solomon Oliver, Jr. |
| | : | |
| vs. | : | |
| | : | |
| **VANCUREN SERVICES, INC.**, *et al.* | : | |
| | : | |
| Defendants. | | |

**JOINT MOTION TO APPROVE SETTLEMENT OF FLSA COLLECTIVE ACTION SETTLEMENT AND CLAIMS PROCEDURE**

Plaintiff, Blaire Woodward, individually and on behalf of all Putative Class Members ("Plaintiffs"), and Defendants VanCuren Services, Inc. and David Van Curen respectfully move this Court for an Order approving the Fair Labor Standards Act ("FLSA") settlement reached by the parties and show as follows:

1. Plaintiff Woodward filed the above-styled collective action Lawsuit against Defendants VanCuren Services, Inc. and David Van Curen in the United States District Court for the Northern District of Ohio, Eastern Division (the "Court") on August 17, 2020.

2. Plaintiff Woodward asserts that Defendants violated various provisions of the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act ("OMFWSA") by (1) failing to properly calculate overtime rates of pay for himself and other similarly situated individuals and (2) unlawfully deducting compensable time from him and other similarly situated individuals. Plaintiff Woodward also asserted a violation of the Families First Coronavirus Response Act ("FFCRA") on behalf of himself only. Defendants have denied, and continue to deny, all claims.

1

3. Plaintiff Woodward brought the FLSA claims on behalf of himself and all others similarly situated, where the class was defined as:

> (a) All current and former hourly paid Tree Care Technicians of Defendants who, during the past three (3) years, had time deducted from their hours worked when Defendants knew or should have known that the employees continued to perform substantial duties for their employers' benefit during that time; and

> (b) All current and former hourly paid Tree Care Technicians of Defendants who, during the past three (3) years, worked on state and/or local prevailing wage jobs and received a prevailing wage rate but whose "regular rate of pay" was unlawfully calculated pursuant to the FLSA, resulting in unpaid overtime.

4. To avoid further litigation costs, and the time and resources attendant to litigation, Defendants and Plaintiff, on behalf of himself and all similarly situated individuals, have agreed to settle the claims in the Lawsuit. Defendants and Plaintiff have entered into a Settlement and Release Agreement ("Settlement Agreement" or "Agreement") which will take effect following the Court's approval. The terms of the settlement are reasonable and appropriate and fair to all parties involved and a compromise of bona fide disputed claims. Accordingly, the Parties ask the Court to approve the settlement and enter an order approving the terms of the settlement.

5. Bona fide disputes and controversies exist among the Parties, both as to liability and the amount thereof, if any, including disputes concerning employee status, exempt status and other exemptions, the amount of overtime pay due, if any, the availability of any liquidated damages, pre-judgment interest and whether any alleged violations constitute willful violations of the FLSA. The current settlement before the Court is the result of these bone fide disputes.

6. While Defendants deny liability, the Parties individually reviewed compensation information to reasonably approximate the alleged potential damages at issue in the case. The exchange of this information allowed the Parties to form a basis for productive negotiations. The

Parties conducted informal discovery, investigated the supporting facts, and thoroughly studied the legal principles applicable to the claims and defenses asserted in the case.

7. Based upon Plaintiffs' counsel's investigation, legal evaluation, and taking into account the contested legal and factual issues involved, including Plaintiffs' counsel's assessment of the uncertainties of litigation and the relative benefits conferred upon the Plaintiffs pursuant to the settlement reached by the Parties, Plaintiffs' counsel has concluded that the settlement is fair, reasonable, adequate, and in the best interests of the Plaintiffs. While Defendants deny liability, the Parties and their counsel recognize that further conduct of this case would be time-consuming and expensive and are mindful of the uncertainly and risks inherent in litigation, and that it is prudent and beneficial that Plaintiffs' claims be fully and finally settled in the manner and upon the terms and conditions set forth in the Settlement Agreement. In addition, because of the various defenses asserted by Defendants and the possibility that Defendants may have successfully defeated or limited some or all of Plaintiffs' claims, including those claims related to hours actually worked, similarly situated status, willfulness, liquidated damages, and compensation for unpaid overtime, the Parties believe that the settlement represents a fair compromise of a bone fide dispute. Moreover, given the strong likelihood that absent a settlement, this case would have proceeded to through lengthy discovery and then to trial, a compromise of the claims prevents all Parties from incurring the additional costs and delay associated with trial and possibly an appeal.

8. The Parties agree that the terms of the settlement are fair and equitable and were negotiated at arm's length with all Parties being fairly and fully represented by counsel of their choosing. The settlement amount takes into account the number of overtime hours claimed by Plaintiffs, the number of workweeks worked by the Plaintiffs during the relevant period and the amount of unpaid overtime to which Plaintiffs allege they are entitled.

3

9. The settlement was negotiated by the attorneys, with the assistance of a highly skilled and specialized mediator. After more than 8 months of exchanging payroll documentation and negotiations, the parties have a reached a settlement. After the parties reached an agreement on the settlement amount, the Parties engaged in further negotiations concerning the specific terms of the written settlement document. Further, it is important to note that the named Plaintiff, on behalf of the opt-ins, deems this settlement fair and reasonable. Plaintiff took an active role in this litigation and stayed informed on its status.

### THE SETTLEMENT TERMS

10. The Settlement will cover 80 putative class members ("Settlement Participants"), including Plaintiff Woodward. (See Exhibit A, Declaration of Gregory R. Mansell, ¶3). Notice shall be issued to every Settlement Participant, as defined below. Those who elect to take their share of the settlement proceeds shall do so by affirmatively opting-in to the settlement. Those who affirmatively opt-in to the settlement will become "Claimants." Plaintiff Woodward is included in the definition of Claimant and is not required to opt-in as he has already joined the case.

11. The settlement shall be administered by a settlement administrator. Defendants will provide the settlement administrator a class list of the Settlement Participants that contains last known home addresses, email addresses, if available in Defendants' system, and other reasonable requests for information by the settlement administrator to effectuate the settlement. Defendants will agree to notice by both regular mail and email, if available.

12. The maximum settlement amount is $415,000.00 ("Settlement Amount"), which sum will cover: (a) 100% of unpaid wage for Claimants; (b) payment to Plaintiff Woodward on his FFCRA claim; (c) Plaintiff Woodward's Service Award; (d) Plaintiffs' Counsel's attorneys'

4

fees and expenses; and (e) the cost of settlement administration. However, if the total unpaid wages of all Claimants exceeds the Settlement Amount (less attorneys' fees and costs, administration costs, Plaintiff Woodward's Service Award, and Plaintiff Woodward' FFCRA payment), then Claimants will receive a pro rata share based on the amount in the spreadsheet attached to the Settlement Agreement. (Exhibit B-2; Exh. A, Mansell Declaration, ¶8). Based on Plaintiffs' counsel's experience participating in dozens of similar settlements and claims made procedures, it is unlikely that any Claimant will receive less than 100% of the wages alleged to be owed to each Claimant. If the total unpaid wages of all Claimants is less than the Settlement Amount (less attorneys' fees and costs, administration costs, Plaintiff Woodward's Service Award, and Plaintiff Woodward' FFCRA payment), then the remainder will revert back to Defendants.

13. Plaintiff's counsel believes the proposed Settlement is in the best interests of all Plaintiffs. The Claimants will likely receive 100% of their alleged (but disputed) unpaid overtime wages. (Exh. B Settlement Agreement – Section 1.8; Exh. A, Mansell Declaration, ¶9).

14. Of the Total Settlement Payment, $5,000.00 will be paid to Plaintiff Woodward as a Service Payment for his efforts in this matter and in exchange for a general release. (See Exhibit B, Definitions at L).

15. Of the Total Settlement Payment, $3,800 will be paid to Plaintiff Woodward as consideration for settling and releasing all claims he has or may have under the FFCRA. This represents approximately 80% of the full amount of Plaintiff Woodward's alleged (but disputed) FFCRA claim.

16. Of the Total Settlement Payment, $138,333.33 (or one-third) will be paid to Plaintiff Woodward's Counsel for attorneys' fees, plus $5,944.95 for actual costs incurred in the action, including the cost of claims administration. (Exh. A, Mansell Declaration ¶10).

17. In addition to the Total Settlement Payment, Defendants will pay the employer-side taxes on the W-2 payments to Plaintiff and Claimants, as well as the full amount of the mediation fee for the mediator utilized by the parties in this matter.

18. In exchange for these payments and other consideration provided for in the Agreement, the Action will be dismissed, and Plaintiff Woodward and the Claimants will release Defendants from any and all federal and state wage-and-hour claims, rights, demands, liabilities and causes of action of every nature and description, including but not limited to unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees and expenses, whether known or unknown, pursuant to the FLSA and other applicable state wage and hour laws, for the Released Period, which is defined as August 17, 2017 through the date the Court gives approval of the settlement. The proposed Notice of Settlement of Collective Action Lawsuit is attached to the Settlement Agreement as Exhibit B-1. A proposed Order Approving Settlement is attached hereto as Exhibit C.

**THE NOTICE PROCEDURE**

19. The settlement agreement provides for Notice to be sent to the Settlement Participants, as defined above. The Notice will include an agreed-upon Opt-In Form, to be used to advise Settlement Participants of the material terms and provisions of the settlement, the procedure and deadline for participating in this settlement, and their rights with respect to this settlement. The Notice and Opt-In Form are attached to the Settlement Agreement as Exhibit B-1.

20. The Settlement and Claims Administration procedure shall be performed by a mutually agreed upon third-party administrator ("Claims Administrator" or "CA"). The dates for the Notice and Settlement procedure as follows:

| | |
|---|---|
| Defendants to provide CA required information to effectuate Notice | Within 5-Business Days of Court Approval of Settlement |
| CA to send Notice to Settlement Participants | Within 15-Days of Court Approval of Settlement |
| Opt-In Period | 45-calendar days after the date on which Notice is initially mailed |
| CA to provide Counsel with list of Claimants | 5-days after close of Opt-In Period |
| Defendants to provide CA settlement funds | 10-days after close of Opt-In Period |
| CA to disburse settlement funds | 20-days after close of Opt-In Period |
| Plaintiffs to Dismiss Lawsuit with Prejudice | 10-days after disbursement of settlement funds |

## THE PROPRIETY OF APPROVAL

### A. The Seven-Factor Standard Is Satisfied.

21. The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness." Landsberg v. Acton Enterprises, Inc., 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing Schulte, Inc. v. Gangi, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

22. As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" Crawford v. Lexington-Fayette Urban County Government, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, and the Crawford court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged

7

    in by the parties; (4) the likelihood of success on the merits; (5) the
    opinions of class counsel and class representatives; (6) the reaction
    of absent class members; and (7) the public interest.

UAW v. General Motors Corp., 497 F.3d 615, 626 (6th Cir. 2007) (citing Granada Invs., Inc. v. DWG Corp., 962 F.2d 1203, 1205 (6th Cir.1992); Williams v. Vukovich, 720 F.2d 909, 922-23 (6th Cir.1983)), quoted in Crawford, 2008 WL 4724499 at *3. As shown below and in the Declaration of Gregory R. Mansell, this standard supports the approval of the Settlement.

### No Indicia of Fraud or Collusion Exists

   23. The Parties' Counsel each have extensive experience litigating FLSA claims. The parties exchanged voluminous data and compensation records and then analyzed the data. Then the parties exchanged detailed a factual and legal analysis of the claims and damages. The parties attended a full day mediation on February 17, 2021 with experienced Mediator, Jerome F. Weiss. The Parties continued to negotiate until a resolution was reached on June 15, 2021. The Agreement was achieved only after arms-length and good faith negotiations between the Parties. (Exh. A, Mansell Dec., ¶¶5-7). As such, there is no indicia of fraud or collusion.

### The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval.

   24. The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. In addition, wage and hour class and collective actions, such as this, are inherently complex and time-consuming. Swigart v. Fifth Third Bank, No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) The Parties continue to disagree over the merits of Plaintiff's claims. Plaintiff claims that Defendants failed to pay him and all others similarly situated all of their overtime compensation. Defendants maintain that they paid Plaintiff and all others similarly situated for all hours worked.

In addition, the Parties disagree about the application of a three-year limitations period and liquidated damages. Moreover, the Parties disagree about whether the claims asserted in the Action can proceed collectively.

25. If forced to proceed in this action, the Parties would engage in complex, costly, and protracted litigation. The Settlement, on the other hand, provides substantial relief to Plaintiff and all others similarly situated individuals promptly and efficiently, and amplifies the benefits of that relief through the economies of collective resolution. (Exh. A, Mansell Dec., ¶¶8-9).

### Investigation Was Sufficient to Allow the Parties to Act Intelligently.

26. The Parties engaged in substantial investigation and informal discovery prior to negotiating the Settlement. Prior to filing the Action, Plaintiff's Counsel performed a factual investigation of the claims to set forth a factually specific and accurate description of the claims. After filing the Action, the Parties engaged in extensive informal discovery, and Plaintiff's Counsel performed lengthy, complex damage calculations. Thus, the legal and factual issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well-understood by both sides. (Exh. A, Mansell Dec., ¶¶5-6).

### The Risks of Litigation Favor Approval.

27. Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendants deny liability and raise affirmative defenses to Plaintiff's claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all. (Exh. A, Mansell Dec., ¶5).

### Uncertainty of Recovery Supports Approval.

28. Plaintiff's range of possible recovery is also open to dispute. Even if Plaintiff succeeded on the merits of his claims, the amount of recovery is uncertain and something upon which the Parties disagree.

### Experienced Counsels' Views Favor Approval.

29. The Parties' Counsel are experienced in wage-and-hour collective and class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement. Plaintiff's Counsel support the Settlement as fair and reasonable, and in the best interest of the Plaintiff and all other similarly situated as a whole, as described in the Declaration of Gregory R. Mansell. (Exh. A, Mansell Dec., ¶¶2, 5-6).

### The Public Interest Favors Approval.

30. Approval of a fair and reasonable agreement promotes the public's interest in encouraging settlement of litigation. Edwards v. City of Mansfield, 2016 U.S. Dist. LEXIS 64159, *10 (N.D. Ohio May 16, 2016); Williams v. K&K Assisted Living LLC, 2016 U.S. Dist. LEXIS 9310, *3 (E.D. Mich. Jan. 27, 2016) (district courts may approve FLSA settlements "in order to promote the policy of encouraging settlement of litigation"), quoting, Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div., 679 F.2d 1350, 1354 (11th Cir. 1992). Settlement agreements assure that Plaintiff and Claimants will receive compensation for the alleged violations at issue. As one Court explained, "the certainty and finality that comes with settlement also weighs in favor of approving a fair and reasonable settlement." Edwards, 2016 U.S. Dist. LEXIS 64159 at *10. The same is true here. The settlement promotes public interest by providing fair and efficient payments to Claimants, avoiding the

continued expenditure of judicial resources on protracted complex litigation, and eliminating the risks that both parties face through the litigation process.

### B. The Settlement Distributions Are Fair, Reasonable and Adequate.

31. As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." Crawford v. Lexington-Fayette Urban County Government, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing Ortiz v. Fibreboard Corp., 527 U.S. 815, 855 (1999). All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for the Plaintiffs.

#### The Individual Payments Are Reasonable and Adequate.

32. Plaintiff Woodward and Claimants may receive up to 100% of the unpaid overtime wages alleged to be owed. Providing Claimants their full alleged wages through the certainty of a settlement highly favors the fairness of the settlement.

#### Plaintiff Woodward's Service Award Is Proper and Reasonable.

33. Service awards to a representative plaintiff recognizing the value of his or her services on behalf of other participants are proper. As stated in In re Dunn & Bradstreet Credit Services Customer Litigation, 130 F.R.D. 366 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

130 F.R.D. at 373 (citing Wolfson v. Riley, 94 F.R.D. 243 (N.D. Ohio 1981); Bogosian v. Gulf Oil Corp., 621 F. Supp. 27, 32 (E.D. Pa. 1985); In re Minolta Camera Products Antitrust Litigation, 666 F. Supp. 750, 752 (D. Md. 1987)).

34. In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting

class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of case." In re Southern Ohio Correctional Facility, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997). The courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." Dun & Bradstreet, 130 F.R.D. at 374 (citing In re Jackson Lockdown/MCO Cases, 107 F.R.D. 703, 710 (E.D. Mich. 1985)). Plaintiff Woodward contributed significant time, effort, and detailed factual information enabling the Parties to successfully resolve this matter. His time and efforts support the requested service payment. (Exh. A, Mansell Dec., ¶16).

### The Attorneys' Fees and Expenses to Plaintiffs' Counsel Are Proper and Reasonable.

35. After the Court has confirmed that the terms of settlement are fair to Plaintiff and all others similarly situated, it may review the Parties' agreement as to the provision of fees and costs to Plaintiff's Counsel. The Settlement reflects Defendants' agreement to pay Plaintiff's Counsel $138,333.3, or one-third of the Total Settlement Amount in attorneys' fees. It also reflects Defendants' agreement to pay Plaintiff's Counsel their reasonable expenses incurred in the Action.

36. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). The percentage of the fund approach is favor in common fund cases like the instant matter. In Fegley v. Higgins, 19 F.3d 1126, 1134 (6th Cir. 1994), cert. denied, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." Fegley, 19 F.3d at 1134 (quoting United Slate, Tile

& Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co., 732 F.2d 495, 502 (6th Cir.1984)).

37. Fegley was followed in Bessey v. Packerland Plainwell, Inc. 2007 WL 3173972 (W.D. Mich. 2007), in which the district court approved a one-third attorneys' fee in an FLSA settlement very much like the one presented here. Fulfilling Fegley's emphasis on "encourag[ing] the vindication of congressionally identified policies and rights," the Bessey court found "the percentage of fund method is the proper method in this case for compensating plaintiffs' counsel. The fact that the damages which could have been claimed by each class member were relatively modest provides a strong reason for adopting the percentage of recovery method, for it rewards counsel for taking on a case which might not otherwise be economically feasible." Bessey, 2007 WL 3173972, at *4 (citing Rawlings v. Prudential Properties, Inc., 9 F.3d 513, 516 (6th Cir. 1993) (the district court "must make sure that [class] counsel is fairly compensated for the amount of work done as well as for the results achieved" and "the percentage of the fund method more accurately reflects the results achieved"). *Accord*, In re Revco Securities Litigation, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993) ("'[t]he percentage of the fund approach… provides a fair and equitable means of determining attorney's fees'" because "'the size of a common fund is an objective yardstick by which the benefit conferred upon the class can be measured'").

38. In determining the reasonableness of the one-third fee, the Bessey court considered the comparative data about Rule 23 class settlements summarized in Shaw v. Toshiba America Information Systems, Inc., 91 F. Supp. 2d 942 (E.D. Tex. 2000), discussed in Bessey, 2007 WL 3173972, at *4:

> The most complete analysis of fee awards in class actions conducted to date was conducted by the National Economic Research Associates, an economics consulting firm. The data is reported at Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N.

13

> Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (NERA, June 1995) (hereinafter "NERA Study"). <u>This data indicates that regardless of size, attorneys' fees average approximately 32% of the settlement</u>.

<u>Shaw</u>, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Exh. 12) (emphasis added).

The NERA Study relied upon in <u>Shaw</u> and <u>Bessey</u> showed the average fee to class counsel was approximately one-third of the settlement, while the average result achieved for class members was only 7% to 11% of claimed damages. Measured against that standard, the settlement in the present case is exemplary. As discussed above, before deductions, Claimants may receive up to 100% of their damages. Therefore, the attorneys' fees requested are reasonable in light of the exceptional benefit achieved for Plaintiff and Claimants.

39. The attorneys' fees requested by Plaintiff's Counsel should not be altered because counsel efficiently resolved this case early on rather than prolonging the litigation and increasing their potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121. Had this case not settled, Plaintiff's Counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Defendants could have succeeded. Therefore, the Plaintiff and all others similarly situated were at great risk for non-payment. This risk of non-payment strongly supports the amount requested here and warrants approval.

## **CONCLUSION**

40. The Parties submit that this Settlement is a fair and reasonable resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court: (1) enter the

proposed Order Approving Settlement; (2) approve Plaintiff's Counsel's request for attorneys' fees, costs, and expenses; (3) approve Plaintiff Woodward's Service Payment; (4) approve Plaintiff Woodward's FFCRA Settlement Payment; (5) approve the Notice of Settlement of Collective Action Lawsuit; and (6) retain jurisdiction to enforce the Settlement.

Respectfully Submitted,

/s/*Greg R. Mansell*
Greg R. Mansell (0085197)
(*Greg@MansellLawLLC.com*)
Carrie J. Dyer (0090539)
(*Carrie@MansellLawLLC.com*)
Kyle T. Anderson (0097806)
(*Kyle@MansellLawLLC.com*)
Mansell Law, LLC
1457 S. High St.
Columbus, Ohio 43207
Ph: (614) 610-4134
Fax: (614) 547-3614
*Attorneys for Plaintiff Blaire Woodward*


-AND-


*/s/ James O'Connor*
James O'Connor (0063428)
Jonathan H. Krol (0088102)
Reminger Co., LPA
101 W. Prospect Avenue, Suite 1400
Cleveland, Ohio 44115
Phone: (216) 687-1311
joconnor@reminger.com
jkrol@reminger.com
*Attorneys for Defendants David Van Curen and VanCuren Services, Inc.*

15

## CERTIFICATE OF SERVICE

      I certify that on July 23, 2021, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

      /s/*Greg Mansell*
      Greg R. Mansell (0085197)