# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **BLAIRE WOODWARD**, | : | |
| | : | |
| Plaintiff, on behalf of himself and all others similarly situated, | : | Civil Action No. 1:20-cv-1818 |
| | : | |
| | : | Judge Solomon Oliver, Jr. |
| | : | |
| vs. | : | |
| | : | |
| **VANCUREN SERVICES, INC.,** *et al.* | : | |
| | : | |
| Defendants. | | |

## CONFIDENTIAL SETTLEMENT AND RELEASE AGREEMENT

This Confidential Settlement and Release Agreement ("Agreement") is entered into by and between Plaintiff Woodward in the Lawsuit designated above and below, individually and on behalf of all others similar situated, and Defendants VanCuren Services, Inc. and David Van Curen. (together referred to as "Defendants"). Plaintiff Woodward and Defendants are sometimes referred to hereinafter as the "Parties."

### I. RECITALS

1. Plaintiff Blaire Woodward filed the above-styled collective action Lawsuit against Defendants VanCuren Services, Inc. and David Van Curen in the United States District Court for the Northern District of Ohio, Eastern Division (the "Court").

2. This Settlement and Release Agreement is intended to cover and fully and completely release all claims asserted or that could have been asserted in the Lawsuit against Defendants and others identified in this Agreement as Released Parties (as defined below).

3. Plaintiff Woodward asserts that Defendants violated various provisions of the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act ("OMFWSA") by (1) failing to properly calculate overtimes rate of pay for himself and other similarly situated individuals and (2) unlawfully deducting compensable time from him and other similarly situated individuals. Plaintiff Woodward also asserted a violation of the Families First Coronavirus Response Act ("FFCRA") on behalf of himself only. Defendants have denied, and continue to deny, Plaintiff's claims.

4. Plaintiff Woodward brought the FLSA claims on behalf of himself and all others similarly situated, where the class was defined as:

    (a) All current and former hourly paid Tree Care Technicians of Defendants who, during the past three (3) years, had time deducted from their hours worked when Defendants knew or should have known that the employees continued to perform substantial duties for their employers' benefit during that time; and

    (b) All current and former hourly paid Tree Care Technicians of Defendants who, during the past three (3) years, worked on state and/or local prevailing wage jobs and received a prevailing wage rate but whose "regular rate of pay" was unlawfully calculated pursuant to the FLSA, resulting in unpaid overtime.

  5. On February 17, 2021, the Parties mediated the Lawsuit before professional mediator Jerome F. Weiss. The Parties continued to negotiate until a resolution was reached on June 15, 2021. As a result of the Parties' arms-length negotiations, the Settling Parties (as defined below) now agree to settle the Lawsuit.

  6. Class Counsel (as defined below) has made a thorough and independent investigation of the facts and law related to the allegations in the Lawsuit. In agreeing to the terms of this Agreement, Class Counsel has considered: (a) the facts developed during the litigation and mediation of the Lawsuit and the law applicable thereto; (b) the facts developed from speaking with Plaintiff Woodward; (c) the attendant risks of continued litigation and the uncertainty of the outcome of the claims alleged against Defendants; and (d) the desirability of consummating this settlement according to the terms of this Agreement. Plaintiff Woodward has also concluded that the terms of this Agreement are fair, reasonable, and adequate, and that it is in the best interest of the Claimants (as defined below) to settle their claims against Defendants pursuant to the terms of this Agreement.

  7. Defendants deny the allegations in the Lawsuit, and specifically deny that they engaged in any wrongdoing or that they violated any law in any respect, including, but not limited to, the FLSA, Ohio Minimum Fair Wage Standards Act, and the Families First Coronavirus Response Act. Defendants and the Released Parties are entering into this Agreement because, among other things, it will eliminate the burden, risk, and expense of further litigation.

  8. Neither this Agreement nor any document referred to herein, nor any action taken to carry out this Agreement, may be used in any way as an admission, concession, or indication by or against Defendants or any Released Party, or any one of them, of any fault, wrongdoing, or liability whatsoever.

  9. This Agreement is intended by the Settling Parties (as defined below) to fully, finally, and forever resolve, discharge, and settle the Lawsuit, and to fully and forever release and discharge the Released Claims (as defined below) and Plaintiff Woodward's Released Claims (as defined below), upon and subject to the terms and conditions set forth herein.

  10. In consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Settling Parties, IT IS HEREBY AGREED, by and between the undersigned, subject to the conditions set forth herein, that the claims of Plaintiff Woodward against Defendants and any Released Party shall be settled, compromised, and dismissed, on the merits and with prejudice, and that Plaintiff Woodward's Released Claims and

the Claimant's Released Claims shall be finally and fully compromised, settled, and dismissed as to the Released Parties.

## II. DEFINITIONS

In addition to the terms defined elsewhere in the Agreement, the following terms used in this Agreement shall have the meanings ascribed to them below:

    a.    "Defendants' Counsel" means Reminger Co., LPA and their respective attorneys.

    b.    "Claimants" means those who elect to take their share of the settlement proceeds by affirmatively opting-in to the settlement. Plaintiff Woodward is included in the definition of "Claimants" but is not required to opt-in as he has already joined this case.

    c.    "Class Counsel" means Mansell Law, LLC and its attorneys, who warrant and represent that no other law firms or attorneys are serving in any capacity as Class Counsel.

    d.    "Plaintiff Woodward's Released Claims" mean any and all claims and causes of action (except for claims arising specifically from a breach of this Agreement), whether known or unknown, arising out of or related to Plaintiff Woodward's employment or other relationship with Defendants, and any other events or transactions involving the Released Parties that precede the date of this Agreement. The claims and causes of action released by Plaintiff Woodward, in addition the claims asserted in the Lawsuit, include but are not limited to, the following: contract, tort, or other common law, including, without limitation, breach of contract, promissory estoppel, detrimental reliance, wrongful discharge, discrimination on the basis of race, sex, age, national origin, color, religion, sexual orientation, disability or any other characteristic protected under federal or state law, retaliation, failure to accommodate, leave time or benefits, negligence, gross negligence, negligent hiring, negligent supervision, negligent retention, tortious interference with a prospective business relationship, false imprisonment, assault and battery, intentional infliction of emotional distress, slander, libel, fraud, misrepresentation, and invasion of privacy, as well as all claims for salary, benefits, bonuses, severance pay, or vacation pay; claims for medical bills; all matters in law, in equity, or pursuant to statute, including damages, attorneys' fees, costs, and expenses; and, without limiting the generality of the foregoing, to all claims, including, but not limited to, claims arising under the FLSA, 29 U.S.C. § 200 *et seq.*; Ohio Revised Code, O.R.C. § 4111 *et seq*, 42 U.S.C. § 1981; the Genetic Information Nondiscrimination Act; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*; the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*; the Age Discrimination in Employment Act, the Equal Pay Act, the Civil Rights Act of 1991, the Family and Medical Leave Act of 1993, 42 U.S.C. § 1981, the Families First Coronavirus Response Act; discrimination, harassment, retaliation claims and worker's compensation retaliation claims under applicable state law (except, this release shall not include any workers' compensation claims that exist or may exist in the future); the wage/hour laws and regulations of any state and any other federal, state, or local law, statute, or ordinance affecting or related to Plaintiff Woodward's employment and/or relationship with Defendants. Plaintiff Woodward waives any right to seek, or accept, employment with any Released Party, and agrees that in the event he does seek or applies for such employment,

this Agreement shall constitute lawful, sufficient, non-discriminatory and non-retaliatory grounds for denying employment.

   e. "Attorneys' Fees and Costs" means the amount of attorneys' fees and costs that Defendants have agreed shall be paid for the services provided by Class Counsel to Plaintiff Woodward and the Claimants. Attorneys' Fees and Costs shall consist of attorneys' fees in the amount of $138,333.33, or one-third of the Settlement Amount, $5,944.95 for actual costs incurred in the Lawsuit. "Attorneys' Fees and Costs" is included in the Settlement Amount (defined below) and will compensate Class Counsel for all work performed in the Lawsuit both as of the date of this Agreement as well as for all of the work remaining to be performed in finalizing the case and administering the settlement.

   f. "Court" means the United States District Court for the Northern District of Ohio, Eastern Division.

   g. "Effective Date" means the latest date reflected below on which the Parties execute this Agreement.

   h. "Plaintiff Woodward's FFCRA Payment" is the $3,800.00 he shall receive as consideration for settling and releasing all claims he has or may have under the Family First Coronavirus Response Act. The Settlement Amount shall be inclusive of such Plaintiff Woodward's Payment. One-half of Plaintiff Woodward's Payment will be treated as ordinary wages subject to payroll tax withholdings and one-half as liquidated damages or miscellaneous payments. Defendants are responsible for payment of the employer's share of payroll taxes as required by law, and outside the Settlement Amount. This payment is in addition to the Service Award paid to Plaintiff Woodward.

   i. "Released Claims" means the Claimants will release any and all federal and state wage-and-hour claims, rights, demands, liabilities and causes of action of every nature and description, including but not limited to unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees and expenses, whether known or unknown, pursuant to the FLSA and other applicable state wage and hour laws, for the Released Period.

   j. "Released Parties" mean VanCuren Services, Inc. and David Van Curen, and each of their current, former, and future affiliates, including, without limitation, investors, owners, parents, subsidiaries, and related entities, predecessors, successors, divisions, joint ventures and assigns, and each of its past or present directors, owners, officers, employees, partners, members, employee benefit plan administrators and fiduciaries, trustees, principals, agents, insurers, co-insurers, re-insurers, managers, shareholders, attorneys, personal or legal representatives, in their individual and corporate capacities, and heirs and assigns, and any individual or entity which could be jointly liable with the Released Parties.

   k. "Released Period" means August 17, 2017 through the date the Court gives approval for the Settlement.

   l. "Service Award" is the $5,000.00 given to Plaintiff Woodward as a service award to be paid from the total Settlement Amount in addition to Plaintiff Woodward's Payment.

DM-#8029572.4

    m. "Settlement Amount" is Four Hundred Fifteen Thousand and 00/100 dollars ($415,000.00). This does not include Defendants' share of the payroll taxes required to be withheld by law, nor the cost of the mediator, Jerome Weiss.

    n. "Settlement Proceeds Available for Claimants" equals the Settlement Amount, less Attorneys' Fees and Costs, Administration Costs, Service Award, and Plaintiff Woodward's FFCRA Payment.

    o. "Settlement Participants" means all current and former hourly paid individuals who meet the class definition. There are a total of eighty (80) Settlement Participants, including Plaintiff Woodward

    p. "Settling Parties" means the Released Parties and the Claimants.

### III. THE SETTLEMENT

**1. Procedure and Consideration**

    1.1. The Settlement and Claims Administration procedure shall be performed by a mutually agreed upon third-party administrator. Within 5-business days of the Court's approval of this Settlement, Defendants shall provide all required information to the Claims Administrator to effectuate Notice. Defendants will provide the settlement administrator a class list of the Settlement Participants that contains last known home addresses, email addresses, if available in Defendants' system, and other reasonable requests for information by the settlement administrator to effectuate the settlement. Defendant will agree to notice by both email and regular mail. Both methods will be utilized where available.

    1.2. Within 15-days of Court approval of this Settlement, the Claims Administrator shall issue Notice to every Settlement Participant (excluding Plaintiff Woodward). A true and accurate copy of the Notice to be sent is attached hereto as Exhibit B-1. Those who elect their share of the settlement proceeds shall do so by affirmatively opting-in to the settlement within forty-five (45) calendar days after the date on which Notice is initially mailed to Potential Opt-in Plaintiffs (the "Opt-In Period"). Opt-in forms shall be deemed timely if they are postmarked by the 45th day. If an opt-in form is postmarked after the Opt-In Period, the Administrator shall notify Defendants through Defendants' Counsel, who will have 5 days to decide whether or not to accept the late Opt-in as a valid Claimant.

    1.3. In the event any Opt-In Form is timely submitted but does not contain a signature or sufficient information to identify a Claimant for compensation purposes, the Claims Administrator shall provide the Potential Claimant a letter, phone call or email requesting such omitted information ("Cure Contact"). In order for the Potential Claimant to be considered a Claimant, the information must be provided by the last day of the Opt-In Period. If the Cure Contact information is provided after the Opt-In Period, the Administrator shall notify Defendants through Defendants' Counsel, who will have 5 days to decide whether or not to accept the late Cure Contact information and deem the Settlement Participant to be a valid Claimant.

1.4. Within five (5) calendar days after the close of the Opt-In Period, the Claims Administrator shall provide all Counsel a list of Claimants and complete electronic copies of all valid and timely returned Opt-In Forms and, if requested, the envelopes in which they were sent.

1.5. Those who affirmatively opt-in to the settlement will become Claimants. Plaintiff Woodward is included in the definition of Claimant and is not required to opt-in as he has already joined the case.

1.6. Within ten (10) calendar days after the close of the Opt-In Period and after receiving confirmation from the Settlement Administrator as to the total Settlement Funds due, including employer's side taxes, Defendants shall provide the Claims Administrator the funds necessary to effectuate the settlement..

1.7. Within twenty (20) calendar days after the close of the Opt-In Period, the Claims Administrator shall disburse payment for Claimants (including Plaintiff Woodward), Attorneys' Fees and Costs, the Service Award, and Plaintiff Woodward's FFCRA Payment.

1.8. Settlement proceeds for each Claimant will be equal to 100% of alleged unpaid wages as set forth in the spreadsheet attached hereto as Exhibit B-2. However, if the total unpaid wages of all Claimants exceeds the Settlement Proceeds Available for Claimants, then Claimants will receive a pro-rata share of the Settlement Proceeds Available for Claimants based on the amounts in Exhibit B-2. If the total unpaid wages of all Claimants is less than the Settlement Proceeds Available for Claimants, then the remainder of the Settlement Proceeds Available for Claimants will revert back to Defendants.

1.9. One-half of all individual settlement payments to the Claimants who participate in the settlement will be treated as ordinary wages subject to payroll tax withholdings (reportable via IRS W-2 Form) and one-half as liquidated damages or miscellaneous payments (reportable via IRS 1099 Form). Defendants are responsible for payment of the employer's share of payroll taxes as required by law, in addition to the Settlement Funds.

2. **Taxes**

2.1. Each Claimant shall be solely responsible for the reporting and payment of his or her share of any federal, state, and/or local income tax or other tax or any other withholdings, if any, on any of the payments made pursuant to this Agreement. The Released Parties, Class Counsel, and Defendants' Counsel do not make any representation, and it is understood and agreed none have made any representation, as to the taxability of any Claimant's portion of the Settlement Amount.

2.2. The Claimants agree to **INDEMNIFY AND HOLD HARMLESS** the Released Parties for any taxes, penalties and interest duty due by or assessed to the Released Parties on their respective receipt of payments.

3. **Dismissal of the Lawsuit**

3.1 The Parties agree to jointly (or through an unopposed motion) file a motion to seek Court approval of this Agreement by no later than July 22, 2021, or as otherwise required by

the Court. The Parties shall request that the Court approve the settlement and enter a conditional order of dismissal. No later than 10 days after all settlement payments have been tendered, the Parties will request the Court to enter an Order of Dismissal, with Prejudice, on *Woodward v. VanCuren Services, Inc., et. al.*, Case No. 1:20-cv-1818 (N.D. Ohio, Eastern Division). This includes Plaintiff Woodward's dismissal of his FFCRA claim.

        3.2    Checks issued to Claimants pursuant to this Agreement shall remain negotiable for a period of one-hundred twenty (120) calendar days from the date of the check. Claimant who fail to timely negotiate their Settlement Payments shall, like all other Settlement Class Members, forfeit their funds but remain subject to the terms of this Agreement. Any funds remaining in the Settlement Fund after full administration of the settlement shall be returned to Defendants.

    **4.**    **Releases**

        4.1    Upon the Effective Date, each of the Claimants, on behalf of themselves and each of their heirs, legal representatives, successors, assigns, and attorneys, shall be deemed to have fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Released Claims.

        4.2    Upon the Effective Date, Plaintiff Woodward shall also be deemed to have fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all of Plaintiff Woodward's Released Claims.

    **5.**    **Miscellaneous Provisions**

        5.1    This Agreement constitutes the entire agreement among the Settling Parties hereto regarding the subject matter discussed herein, and no representations, warranties or inducements have been made to any party concerning this Agreement other than the representations, warranties, and covenants contained and memorialized herein. Except as otherwise explicitly provided herein, each Settling Party shall bear its own fees, and costs.

        5.2    This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. It shall be binding upon and inure to the benefit of the Settling Parties and their respective heirs, trustees, executors, administrators, successors, and assigns; but, other than the Released Parties, this Agreement is not designed to and does not create any third-party beneficiaries, either express or implied. Paragraph titles or captions contained in this Agreement are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement, or any provision thereof.

        5.3    The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Agreement, and all Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Agreement. Any action to enforce this Agreement shall be commenced and maintained only in this Court.

        5.4    This Agreement shall be considered to have been negotiated, executed, and delivered, and to have been wholly performed, in the State of Ohio, and the rights and obligations

of the Settling Parties shall be construed and enforced in accordance with, and governed by, the substantive laws of the State of Ohio without giving effect to that State's choice of law principles.

   5.5 The language of all parts of this Agreement shall in all cases be construed as a whole, according to their fair meaning, and not strictly for or against any Settling Party.  No Settling Party shall be deemed the drafter of this Agreement.  The Settling Parties acknowledge the terms of this Agreement are contractual and are the product of arms-length negotiations between the Settling Parties and their counsel.

   5.6 Defendants agree to pay the costs of mediator Jerome Weiss. This shall be paid by Defendants, separate from and in addition to the Settlement Amount.

   5.7 The Parties hereby agree that each Party shall have the right to sue for specific performance of this Agreement, as well as declaratory and injunctive relief.

   5.8 One or more waivers of a breach of any covenant, term, or provision of this Agreement by any Party shall not be construed as a waiver of a subsequent breach of the same covenant, term or provision, nor shall it be considered a waiver of any other then-existing, preceding or subsequent breach of a different covenant, term or provision.

   5.9 If any provision of this Agreement is held to be illegal, invalid or unenforceable, or is found to be against public policy for any reason, such provision shall be fully severable; and, this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never been part of this Agreement, and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision, or by its severance from this Agreement.

   5.10 This Agreement may not be changed, altered, or modified, except in writing signed by the Settling Parties.  This Agreement may not be discharged except by performance in accordance with its terms or by a writing used by the Settling Parties.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

WE ATTEST THAT WE HAVE CAREFULLY READ AND CONSIDERED THE FOREGOING CONFIDENTIAL SETTLEMENT AND RELEASE AGREEMENT AND FULLY UNDERSTAND THE EXTENT AND IMPACT OF ITS PROVISIONS, THAT SUCH HAS BEEN EXPLAINED TO US BY OUR LAWYERS, AND THAT WE HAVE EXECUTED THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY COERCION, UNDUE INFLUENCE, THREAT OR INTIMIDATION OF ANY KIND OR TYPE WHATSOEVER, AND THAT NO OTHER PROMISES HAVE BEEN MADE TO US WITH RESPECT TO THIS MATTER.

IN WITNESS WHEREOF, the Settling Parties have executed this Agreement on the respective dates shown, as follows:

**PLAINTIFF:**  *[signature]* Blaire Woodward (Jul 22, 2021 15:16 EDT)      7 , 22 , 2021

**BLAIRE WOODWARD**

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK-SIGNATURES TO FOLLOW]**

DM-#8029572.4

**DEFENDANT VANCUREN SERVICES, INC.:**

By: _____  _____ \_\_\_, 2021
**DAVID VAN CUREN**

Title: President

**DEFENDANT DAVID VAN CUREN:**

By: _____  _____ \_\_\_, 2021
**DAVID VAN CUREN**

*[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]*

**AGREED AS TO FORM:**

**CLASS
COUNSEL:**     _/s/ *Greg R. Mansell*_____      July 22, 2021
                         Greg R. Mansell (0085197)
                         (*Greg@MansellLawLLC.com*)
                         Kyle T. Anderson (0097806)
                         (*Kyle@MansellLawLLC.com*)
                         Mansell Law, LLC
                         1457 S. High St.
                         Columbus, Ohio 43207
                         Ph: (614) 610-4134
                         Fax: (614) 547-3614

**DEFENDANTS' COUNSEL:**

                         */s/James O'Connor*_____      July 22, 2021
                         James O'Connor (0063428)
                         Jonathan H. Krol (0088102)
                         Reminger Co., LPA
                         101 W. Prospect Avenue, Suite 1400
                         Phone: (216) 687-1311
                         joconnor@reminger.com
                         jkrol@reminger.com

DM-#8029572.4

Exhibit B-1

# NOTICE OF COLLECTIVE ACTION LAWSUIT SETTLEMENT

**Blaire Woodward v. VanCuren Services, Inc.**
**United States District Court for the Northern District of Ohio**
**Case No. 1:20-cv-1818**

NOTICE TO: [Enter Name and Address of Collective Member]

**This Notice affects your rights. Please read it carefully.**

The United States District Court for the Northern District of Ohio approved this Notice to let you know that the parties reached a settlement in *Blaire Woodward v. VanCuren Services, Inc., et.al*, N.D. Ohio, Case No. 1:20-cv-1818 (the "Lawsuit"). You are receiving this notice because records show that you are eligible to receive a settlement payment. **You will be eligible to receive a settlement payment if you elect to opt-in to the Lawsuit as explained below.** If you do not opt-in to the Lawsuit, you will not receive a settlement payment and will be excluded from the settlement.

## Summary of the Lawsuit

The Lawsuit asserts that Defendants failed to properly pay certain employees for all overtime hours worked under the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"). More specifically, it is alleged that Defendants (1) failed to properly calculate overtime rates of pay when individuals received different rates of pay in a workweek and (2) unlawfully deducted compensable time from individuals' hours worked. The Lawsuit was brought on behalf of all full-time "Tree Care Technicians" who worked for Defendants between August 17, 2017 and (insert date of court approval of settlement). The Court has not ruled on the merits of any of these claims.

Defendants have denied and continue to deny that it failed to properly pay overtime, and it further denies any and all liability and damages to anyone with respect to the alleged facts and causes of action asserted in the Lawsuit. To avoid the burden, expense, inconvenience, and uncertainty of a continued legal action, however, Defendants have concluded that it is in its best interests to resolve the Lawsuit on the terms of a Settlement Agreement, which is summarized below. By agreeing to settle, Defendants are not admitting liability on any of the factual allegations or claims in the case or that the case can or should proceed as a class or collective action.

## Summary of the Settlement Terms

The basic terms of the settlement are as follows: Defendants will fund a settlement pool. A total settlement payment of $415,000.00 will be allocated to the settlement pool and will be used to pay participating Claimants', along with other fees, costs, awards, and payments associated with this Lawsuit. Individuals who submit a claim form will be entitled to a share of the respective settlement funds based on the amount of unpaid overtime damages each individual is alleged to have accrued while working at Defendants. The amount received by each individual who submits a claim will be up to 100% of the overtime alleged.

All settlement payments will be allocated as follows: 50% to the settlement of wage claims and 50% to the settlement of claims for alleged statutory penalties. All applicable taxes and payroll deductions will be deducted from the wage portion of the settlement payment that you are eligible to receive. Appropriate IRS W-2 and 1099 Forms will be distributed to individuals who receive settlement payments. Individuals should consult with their tax advisors concerning the consequences of the payments they receive under the settlement.

### Options Regarding the Settlement

**Option 1** If you want to receive a settlement payment, you must complete and return a claim form by (insert date). If you timely return a completed claim form, a check will be mailed to you. You will also be deemed to have released any and all federal and state wage-and-hour claims, rights, demands, liabilities and causes of action of every nature and description, including but not limited to unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees and expenses, whether known or unknown, pursuant to the FLSA and other applicable state wage and hour laws, for the time period between August 17, 2017 though (insert date court approves settlement).

**Option 2** If you do not wish to participate in the settlement, do nothing. If you do nothing, you will not receive money from this settlement, but you will retain your legal rights regarding any claims that you may have against Defendants.

### Additional Information

This Notice of Collective Action Lawsuit Settlement is only an abbreviated summary of the case and the terms of the settlement. For all inquiries regarding the Lawsuit, this Notice, or the terms of the settlement should be directed to the Claims Administrator at [enter contact information].

**PLEASE DO NOT CONTACT THE CLERK OF THE COURT OR THE JUDGE WITH INQUIRIES.**

IN ORDER TO RECEIVE A SETTLEMENT PAYMENT IN THIS CASE, YOU MUST COMPLETE, SIGN, AND RETURN THIS FORM TO CLASS COUNSEL NO LATER THAN (**45 DAYS AFTER MAILING**).

YOU MAY RETURN A COMPLETED AND SIGNED FORM BY MAIL, EMAIL, OR FAX TO:

> CLAIMS ADMINISTRATOR INFORMATION TO BE INSERTED

**I.  Personal Information:**

If you move, please notify the Claims Administrator of your new address.  It is your responsibility to keep a current address on file with the Claims Administrator.

**II.  Consent to Join:**

I understand that by signing below, I am consenting to join the lawsuit of *Blaire Woodward v. VanCuren Services, Inc., et.al,* N.D. Ohio, Case No. 1:20-cv-1818, as an opt-in plaintiff for settlement purposes and to participate in the claim process.  I hereby designate the law firm of Mansell Law, LLC, to represent me.  I consent and agree to be bound by the judgment as approved by my attorneys and approved by the Court as fair, adequate, and reasonable.

Signature (required): _____

Print Name (required): _____

Last 4 SS# (required): _____

Phone Number: _____

Email: _____

Date (required): _____

| EE ID: | Weeks Worked: | Damages: |
|---|---|---|
| 388 | 6 | $594.67 |
| 435 | 13 | $1,288.45 |
| 434 | 2 | $198.22 |
| 425 | 63 | $6,244.01 |
| 327 | 173 | $17,146.24 |
| 412 | 81 | $8,028.01 |
| 410 | 18 | $1,784.00 |
| 376 | 61 | $6,045.78 |
| 437 | 24 | $2,378.67 |
| 396 | 21 | $2,081.34 |
| 379 | 114 | $11,298.68 |
| 450 | 10 | $991.11 |
| 266 | 84 | $8,325.34 |
| 415 | 55 | $5,451.12 |
| 261 | 31 | $3,072.45 |
| 401 | 28 | $2,775.11 |
| 356 | 22 | $2,180.45 |
| 299 | 171 | $16,948.02 |
| 420 | 40 | $3,964.45 |
| 293 | 128 | $12,686.23 |
| 5 | 112 | $11,100.46 |
| 290 | 7 | $693.78 |
| 431 | 51 | $5,054.67 |
| 443 | 22 | $2,180.45 |
| 407 | 6 | $594.67 |
| 378 | 42 | $4,162.67 |
| 390 | 8 | $792.89 |
| 442 | 6 | $594.67 |
| 306 | 17 | $1,684.89 |
| 404 | 3 | $297.33 |
| 377 | 172 | $17,047.13 |
| 389 | 7 | $693.78 |
| 384 | 73 | $7,235.12 |
| 449 | 14 | $1,387.56 |
| 359 | 48 | $4,757.34 |
| 454 | 6 | $594.67 |
| 408 | 11 | $1,090.22 |
| 430 | 29 | $2,874.23 |
| 380 | 44 | $4,360.89 |
| 403 | 29 | $2,874.23 |
| 406 | 72 | $7,136.01 |
| 395 | 132 | $13,082.68 |
| 392 | 8 | $792.89 |
| 440 | 29 | $2,874.23 |
| 436 | 13 | $1,288.45 |
| 262 | 170 | $16,848.91 |

| | | |
|---|---|---|
| 441 | 23 | $2,279.56 |
| 438 | 24 | $2,378.67 |
| 382 | 164 | $16,254.24 |
| 371 | 48 | $4,757.34 |
| 409 | 81 | $8,028.01 |
| 323 | 173 | $17,146.24 |
| 453 | 11 | $1,090.22 |
| 342 | 2 | $198.22 |
| 445 | 5 | $495.56 |
| 319 | 127 | $12,587.12 |
| 369 | 171 | $16,948.02 |
| 399 | 18 | $1,784.00 |
| 402 | 110 | $10,902.23 |
| 429 | 55 | $5,451.12 |
| 325 | 53 | $5,252.89 |
| 317 | 162 | $16,056.02 |
| 297 | 165 | $16,353.35 |
| 446 | 20 | $1,982.22 |
| 329 | 168 | $16,650.68 |
| 452 | 11 | $1,090.22 |
| 287 | 84 | $8,325.34 |
| 444 | 2 | $198.22 |
| 263 | 105 | $5,548.24 |
| 324 | 176 | $17,230.25 |
| 337 | 131 | $18,014.28 |
| 9 | 90 | $9,410.38 |
| 372 | 36 | $2,125.01 |
| 296 | 19 | $2,212.78 |
| 387 | 19 | $866.13 |
| 432 | 49 | $3,832.64 |
| 419 | 12 | $1,616.94 |
| 439 | 5 | $140.63 |
| 398 | 20 | $1,884.02 |
| BW | 148 | $16,209.45 |